Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 551 | **DATE** | 12/1/2003 |
| **CASE TITLE** | Florence Brown vs. Eaton Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. In sum, Eaton is entitled to a judgment as a matter of law. Its motion for summary judgment is granted, and this action is dismissed. (11-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC X 2 2003 | |
| | Notified counsel by telephone. | | date docketed | 19 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | 12/1/2003 | |
| SN | courtroom deputy's initials | 03 DEC -2 AM 12:30 | date mailed notice SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FLORENCE BROWN, )
)
Plaintiff, )
)
v. ) No. 02 C 551
)
EATON CORPORATION, )
)
Defendant. )

DEC - 2 2003

MEMORANDUM OPINION AND ORDER

Florence Brown ("Brown") has sued her former employer Eaton Corporation ("Eaton"), charging that Eaton violated the Americans with Disabilities Act ("ADA," 42 U.S.C. §§12111-12117) when it terminated her employment. Eaton has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, and both sides have complied with this District Court's LR 56.1.[1] For the reasons stated in this opinion, Eaton's motion is granted and this action is dismissed.

Summary Judgment Standards

Familiar Rule 56 principles impose on movant Eaton the burden of establishing a lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "consider the evidentiary record in the light most favorable to the non-moving party ... and draw all reasonable inferences in [her] favor" (Lesch v. Crown Cork & Seal

---

[1] This opinion cites to Brown's LR 56.1 response to Eaton's statement as "B. Resp. ¶--."

19

Co., 282 F.3d 467, 471 (7th Cir. 2002)). And Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001) has echoed the teaching of Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986):

> A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

As with any summary judgment motion, this Court accepts nonmovant Brown's version of any disputed facts, but only so long as it is supported by the evidence.

## Application of the Standards

Because the parties are of course fully aware of the circumstances and factual issues involved in this dispute, they will not be set out in a separate Facts section as this Court most frequently does. Instead they will be referred to here as necessary in the course of the substantive discussion.

Brown's claim is simple to summarize: She was diagnosed in 1999 with degenerative disk disease, degenerative joint disease and degenerative arthritis--and she claims those impairments were the reason for her August 2000 firing. For its part, Eaton claims that it discharged Brown because Brown's co-worker Phyllis Mack ("Mack") reported on August 2, 2000 that Brown told her that the two of them should slow down the pace of work so as to stretch it out to occupy the entire shift--if true, a violation of one of Eaton's express employment Guidelines and a solid

ground for termination.[2]

But Brown's claim is just as simple to dispatch as it was to summarize, for she has provided no evidence that would allow a reasonable person to conclude that Eaton fired her because of her impairments. There were two paths that she could have followed to that end: She could have proffered direct or circumstantial evidence of discrimination (the "direct method"), or she could have established her case[3] using the burden-shifting method (the "indirect method") articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (DeLuca v. Winer Indus., Inc., 53 F.3d 793, 797 (7th Cir. 1995)). As applied to ADA, the McDonnell Douglas test requires that a plaintiff show (Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001)):

(1) that she is disabled within the meaning of the ADA,

---

[2] Conduct Guideline 17, part of the Employee Handbook provided to Brown and all other Eaton employees, prohibited "Deliberately slowing down operations, restricting work, or causing/contributing to the slowing down of another employee's work." And the Guidelines state that the "suggested discipline" for such a violation is "discharge."

[3] In the summary judgment context, of course, Brown's burden is only that of creating reasonable inferences, not one of proof as such (see Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir. 1994)). But any continued repetition of that burden involves an awkward locution, an awkwardness contributed to by the fact that so much of the caselaw speaks of what a party responding to a Rule 56 motion must "establish" or "prove" or "show." Whenever this opinion employs such terms, it should therefore be understood as denoting Brown's lesser burden of creating reasonable inferences, not the actual burden of persuasion.

3

(2) that she was qualified for the position,

(3) that she was subject to an adverse employment action, and

(4) that the circumstances surrounding the adverse action indicate that it is more likely than not that her disability was the reason for the action.

Although Brown has not identified through which of those methods she would seek to meet her burden, she fails to demonstrate a genuine issue of material fact under either approach as to the circumstances surrounding her discharge. Brown asserts that her supervisor Robert Doporcyk ("Doporcyk") repeatedly asked her to perform tasks that her doctor restricted her from performing and modified her work environment to make it harder for her to perform her job. More specifically, Brown testified that Doporcyk repeatedly asked her to lift boxes that were too heavy for her (B. Dep. 116). At the same time, though, Brown admits that Eaton adjusted her work area in response to her requests to make it more comfortable and efficient (B. Resp. ¶¶23-25). Furthermore, Brown acknowledges that neither Doporcyk nor anyone else at Eaton made her lift boxes or perform other tasks that she was restricted from performing, nor did they discipline her for refusing to lift boxes (B. Dep. 80; B. Resp. ¶19).

But it is really unnecessary in the circumstances of this case to address the numerous contested substantive issues regarding Brown's disability vel non at all. That is so because

no reasonable factfinder could conclude that Brown was fired because of her impairments. Brown has not testified that Doporcyk's assertedly harassing conduct was either contemporaneous with or causally related to her discharge (Geier v. Medtronic, Inc., 99 F.3d 238, 242 (7th Cir. 1996)). Moreover, on the record evidence it is uncontroverted that Doporcyk was not involved in any way in the decision to terminate Brown, which was made by Eaton's Human Resource Supervisor Debbie Shedor ("Shedor").[4]

In cases such as this, the relevant focus is on the motivation of the decisionmaker--here, Shedor (Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 396 (7th Cir. 1997)). Doporcyk's only involvement was to relay a complaint by Mack to Shedor, who then heard from Mack and several other co-workers about Brown's conduct on August 2, 2000.[5] And quite apart from

---

[4] Because Shedor's affidavit does not state expressly who in the Eaton hierarchy ultimately made such termination decisions, but it is clear that the decision was based on her determination that Brown had violated Guideline 17, this opinion will speak of Shedor as the decisionmaker.

[5] Brown does not argue--and nothing in the record shows--that Doporcyk would not have reported the incident to the Department but for his claimed animus toward Brown. Such a showing might perhaps have been relevant to Brown's argument of discrimination, but without it Brown's attempts to urge Doporcyk's animus are for naught. That is particularly true because Brown has not argued that this is a hostile work environment case (Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998)), and this Court does not read the facts as even arguably stating such a claim.

5

Brown's failure to demonstrate a temporal connection between Doporcyk's claimed harassment and the discharge, she has offered no evidence as to any inappropriate motivation on Shedor's part when the latter made the decision to fire Brown.

All the same, summary judgment in Eaton's favor would still be granted even if Brown had succeeded on her prima facie case under McDonnell Douglas (as she has not), for she has also fallen short in tending to show that Eaton's stated reason for terminating her was pretextual (Pugh, 259 F.3d at 626). Eaton has supplied the deposition testimony of Doporcyk, Mack and Shedor. In response, Brown points only to her own deposition testimony that she did not recall ever having the conversation that Eaton says gave rise to her termination (Brown Dep. 86-87).[6]

Not surprisingly, that failure of recollection does not suffice. As Nawrot v. CPC Int'l, 277 F.3d 896, 906 (7th Cir. 2002), quoting Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000), has stated the often-repeated doctrine in this area:

---

[6] Brown's counsel misleadingly labels Brown's denial that she "slowed down work at the plant" (B. Add'l Facts ¶16) as a denial that the asserted conversation with Mack took place (B. Mem. 11). And Mem. 2 says flatly:

> Plaintiff has denied under oath that any such a conversation took place.

But that is simply not the case: Brown's Dep. 86-87 testimony (which counsel cites for that proposition) was simply that she did not recall having the conversation, not a denial that it took place. In all events, though, the determinative fact is that the matter was reported to Shedor and she believed it.

6

> But pretext requires more than a showing that the decision was "mistaken, ill considered or foolish, [and] so long as [the employer] honestly believed those reasons, pretext has not been shown."

Here Brown has offered no evidence at all to suggest that the Department made an unreasonable decision when it fired her based on the complaints it received, nor has she provided any evidence even suggesting that the Department was motivated by any reason other than the stated one.

Brown's other attempts to discredit Eaton's stated reason for termination also miss the mark. They call for only brief discussion.

For one thing, Brown contends that Mack's affidavit contradicts what Mack originally told Shedor, but that is a red herring because--quite obviously--Shedor did not have Mack's affidavit at the time she decided to fire Brown. Instead it is uncontroverted that Shedor had and acted upon Mack's contemporaneous (August 4, 2000) signed statement that confirmed Shedor's interview of Mack that day (B. Ex. 11), and that directly tracks Shedor's statement of the slowdown reason for firing Brown.

As for Brown's contention that her conduct did not constitute a violation of Eaton's Guidelines, our Court of Appeals has repeatedly warned that courts "do not sit as a super-personnel department that reexamines an entity's business decision and reviews the propriety of the decision" (Nawrot, 277

F.3d at 906). Here Brown has tendered no evidence that the Guidelines were enforced arbitrarily or inconsistently (<u>Curry v. Menard, Inc.</u>, 270 F.3d 473, 479-80 (7th Cir. 2001)),[7] and the circumstances are not so askew that common sense casts doubt on Eaton's motives (<u>Nawrot</u>, 277 F.3d at 906-07). No judicial second-guessing is in order, and Brown fails in the pretext area as well.

As a last-ditch effort, Brown argues that even if Eaton's stated reason for dismissing her is legitimate, it should still be held liable under a mixed-motive theory. Brown contends that under <u>Desert Palace, Inc. v. Costa</u>, 123 S.Ct. 2148 (2003) she need demonstrate only, through either direct or indirect evidence, that her disability was <u>a</u> motivating factor for the adverse employment action. No court in this circuit has yet decided whether or not the sea change that will likely follow the Title VII decision in <u>Desert Palace</u> extends to ADA as well (although some courts elsewhere have so held--for one court's take on this issue, see <u>Skomsky v. Speedway SuperAmerica, L.L.C.</u>, 267 F. Supp. 2d 995, 1000 (D. Minn. 2003)). But that question is purely hypothetical here, because--as already stated--Brown has fallen at the prima facie hurdle.

---

[7] Indeed, Eaton has provided proof that it had previously discharged the only other employee whom it had found to have committed a violation of the same Guideline 17--a nondisabled employee (Shedor Aff. ¶7).

## Conclusion

Brown has failed to demonstrate, using either the direct or indirect method, the existence of a material issue of fact as to whether disability played any part in the decision to terminate her, something essential to any viable ADA claim. Relatedly, Brown has not established a genuine issue over whether Eaton's stated reason for terminating her was pretextual. In sum, Eaton is entitled to a judgment as a matter of law. Its motion for summary judgment is granted, and this action is dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date: December 1, 2003